W. Scott Garcelon *vs.* Commercial Travellers' Eastern Accident Association.

Suffolk.   March 22, 25, 1907. — May 15, 1907.

Present: Knowlton, C. J., Morton, Loring, Sheldon, & Rugg, JJ.

*Insurance*, Accident.   *Practice, Civil*, Report to full court.   *Custom.   Negligence*, Of one insured.

In an action to recover the indemnity agreed to be paid under the terms of a certificate of accident insurance containing provisions excepting from the accidents for which the insured could recover indemnity those resulting either from voluntary exposure of himself to unnecessary danger or from circumstances that he might have avoided by the use of ordinary prudence or from contributory negligence on his part, the facts were agreed upon by the parties and the presiding judge ruled that they established that the accident was one of those excepted in the certificate, directed the jury to return a verdict for the defendant and reported the case to this court.   *Held*, that the burden was upon the defendant to prove that the accident was one excepted in the certificate, and that the issue before this court was whether the facts agreed upon would permit any other inference than that the verdict was directed rightly.

A certificate of accident insurance was issued by a fraternal beneficiary corporation to a commercial traveller engaged in his occupation in Nebraska.   The certificate contained provisions excepting from the accidents for which the insured could recover indemnity those resulting from voluntary exposure of himself to unnecessary danger, from circumstances that he might have avoided by the use of ordinary prudence or from contributory negligence on his part. The insured suffered from an accident which happened because he was climb-

ing up the side of a box car of a moving freight train. At the trial of an action by him to recover the indemnity specified in the certificate, he contended that such an accident as he suffered from was not within the exceptions of the certificate because it was customary for commercial travellers in Nebraska to do as he did and he had done so continuously on an average of at least once a week. for eight years. There was no evidence that the defendant was informed or had knowledge of such a custom. *Held,* that the inference ·would not be warranted that the defendant agreed to indemnify the plaintiff for any injury resulting from conduct on his part in accordance with such a custom or habit.

A certificate of accident insurance was issued by a fraternal beneficiary corporation to a commercial traveller engaged in his occupation in Nebraska, which contained provisions excepting from the accidents for which the insured could recover indemnity those resulting from voluntary exposure of himself to unnecessary danger, from circumstances that he might have avoided by the use of ordinary prudence or from contributory negligence on his part. The insured, desiring to go by a freight train from one town to another, a usual method of travel in Nebraska, put his baggage in the caboose, the last car, and then, seeing that the train would be delayed while being loaded further, went along a street near the train and was returning when he saw the train start. He thereupon hastened to it and started to climb up the side of a freight car, when there was a jerk, not unusual in the operation of freight trains, and he was thrown off and injured. He brought an action to recover indemnity under the certificate and it was *held,* that, the inference being unavoidable that the insured's own negligence contributed to his injury, he could not recover under the terms of the certificate.

CONTRACT on a certificate of accident insurance issued by a fraternal beneficiary corporation. Writ in the Superior Court for the county of Suffolk dated March 13, 1901.

There was a trial before *Hardy,* J., who, subject to exception by the plaintiff, directed the jury to return a verdict for the defendant and reported the case for determination by this court, judgment to be entered on the verdict if his ruling was correct, otherwise judgment to be entered for the plaintiff in the sum of $2,500.

The agreed facts as to methods of travel in Nebraska and customs of commercial travellers there were as follows: People generally relied upon freight trains for transportation from town to town. These freight trains carried cabooses and were not regular in their movements and, although they had a time schedule given them, the schedule was seldom, if ever, followed, the trains sometimes leaving the stations before and sometimes later than the time given in the schedule, their movements depending upon the amount of freight which they had to load and unload at the various towns. It was, and for many years had been, the habit

of commercial travellers travelling in this vicinity not to rely upon the schedules of time for freight trains, but, upon the arrival of a train, to ascertain as nearly as possible when it would depart, and to continue the transaction of their business while it was being loaded, if their business had not been completed, and, if they were not sooner through, to continue their work until the starting of the train, and then to board it at whatever point on the train they could reach it, whether at the caboose or at the side of a freight car, and upon climbing up the side of the car and reaching the top, they would walk down the line of cars upon their tops and enter the caboose in this manner. Men who had travelled for years in such sections of the country were as expert in so climbing upon freight cars in motion as were members of the train gang. The plaintiff had travelled continuously in such sections of Nebraska as a commercial traveller for eight years and upwards immediately prior to the time of the accident, and during that time had boarded freight trains while they were in motion in the manner described on an average of more than once a week. The plaintiff made no representations to, and did not inform the defendant as to the manner of operating the trains in such portion of Nebraska or of the custom of passengers or commercial travellers in reference thereto, or that it was his own custom so to board trains.

Other facts are stated in the opinion.

*F. P. Cabot*, for the plaintiff.

*W. F. Merritt*, for the defendant.

SHELDON, J. There was at least evidence for the jury that the plaintiff in the loss of his arm suffered a disability caused by external, violent and accidental means within the meaning of the certificate issued to him by the defendant. He complied with all the requirements of the contract as to notice of injury and proof of claim; and no question is now made of his right to recover in this action, unless one of the defences set up is shown as matter of law to be fatal to the maintenance of his claim.

By the terms of the certificate no indemnity is to be paid to any one for an injury caused wholly or in part, directly or indirectly, by voluntary exposure to unnecessary danger, or for any injury which he might have averted or prevented by the exercise of ordinary care, prudence and foresight, or to which his own

negligence should have contributed. The circumstances attending the injury are not in dispute. The plaintiff was a commercial traveller and desired to go by a freight train from one town in Nebraska to another. He arrived seasonably at the railroad station, found the freight train there, and put his baggage in the caboose which was the last car of the train. Seeing that the train was not ready to start, he got off the caboose and went along the street a short distance away from the train, and was then returning toward the train when it suddenly started. Believing that the train was proceeding on its journey he ran up to it, and, while it was in motion, started at a point in the street to climb up the iron ladder upon the side of one of the freight cars, intending to reach the top of that car and, by walking upon the top of it and the following cars while the train was in motion, to reach the caboose. As he grasped one of the rounds of the ladder, the train, which was still in motion, gave a sudden and violent jerk, and he was thrown to the ground in such a manner that his left hand and arm extended over one rail of the track and the car wheel passed over it and crushed it, necessitating its amputation.

Under these circumstances, is it to be said as matter of law either that his conduct was a voluntary exposure to unnecessary danger or that he might have averted or prevented the injury by the exercise of ordinary care, prudence and foresight, or that his own negligence contributed to the injury? If so, the verdict in favor of the defendant was ordered rightly.

It is to be observed that the burden of proof upon these propositions was not, as in ordinary actions for personal injuries, upon the plaintiff to prove his due care, but upon the defendant to show that there was either a voluntary exposure to unnecessary danger or a lack of due diligence. *Noyes* v. *Commercial Travellers' Eastern Accident Association*, 190 Mass. 171, 183, and cases there cited. *Anthony* v. *Mercantile Accident Association*, 162 Mass. 354. The questions here, however, do not arise upon the testimony of witnesses, and the statement of the court in *Anthony* v. *Mercantile Accident Association*, 162 Mass. 354, 357, that where a party has the burden of proving a fact by the testimony of witnesses the jury cannot often be required by the court to say that the fact is proved, does not apply. Here the

facts are agreed; and, as stated in the case last cited, the issue is whether they will permit any other inference than that which is contended for by the defendant.

In our opinion it is impossible to say that the plaintiff's negligence did not contribute to the happening of the injury. He voluntarily attempted to board a moving train by climbing up the iron ladder on the side of a freight car. The danger of this was manifest, that he would be shaken off by the jerks of the train; and this happened. He was injured by the very risk that he chose to run. The case is much like *Willard* v. *Masonic Accident Association*, 169 Mass. 288, *Small* v. *Travelers' Protective Association*, 118 Ga. 900, and *Alter* v. *Union Casualty Co.* 108 Mo. App. 169. It is governed by the same principles as *Glass* v. *Masons' Fraternal Accident Association*, 112 Fed. Rep. 495, *Smith* v. *Preferred Mutual Accident Association*, 104 Mich. 634, *Follis* v. *United States Accident Association*, 94 Iowa, 435, and *Cornish* v. *Accident Ins. Co.* 23 Q. B. D. 453. It is a much stronger case for the defendant than *Overbeck* v. *Travelers' Ins. Co.* 94 Mo. App. 453, which perhaps goes farther than we should be disposed to follow. As in *Tuttle* v. *Travellers' Ins. Co.* 134 Mass. 176, this plaintiff voluntarily placed himself in a position where he was exposed to an obvious danger; the precise injury happened to him which there was reason to fear; and it cannot be said that the language of the policy was not intended and understood to be applicable to such a case.

There is nothing to show that the injury to the plaintiff was due to any negligence of the servants of the railroad company. The jerk was sudden and violent; but it does not appear to have been unusual or unnecessary, much less negligent or wrongful. *Weinschenk* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 250. Freight trains are not expected to be run with freedom from jerks or jolts.

Nor do we find anything in the situation of the plaintiff which exempts him from the imputation of negligence. He desired to take this train; but he had no right to take it negligently at the risk of the defendant. It was by his own voluntary action that he had left it when he was safely in the caboose. His desire to save time by getting this train cannot excuse him. There was a similar desire to save time in *Glass* v. *Masons' Fraternal Acci-*

*dent Association*, 112 Fed. Rep. 495, *Small* v. *Travelers' Protective Association*, 118 Ga. 900, and *Alter* v. *Union Casualty Co.* 108 Mo. App. 169. Nor is the fact that the plaintiff had repeatedly before committed similar acts of negligence of any assistance to him. In this respect the case is like *Smith* v. *Ætna Ins. Co.* 185 Mass. 74; *Weinschenk* v. *Ætna Ins. Co.* 183 Mass. 312; *Piper* v. *Mercantile Mutual Accident Association*, 161 Mass. 589; and *Alter* v. *Union Casualty Co.* 108 Mo. App. 169.

The fact that commercial travellers in Nebraska and the neighboring States are accustomed to take the same risks that the plaintiff took cannot help him. That the plaintiff was a commercial traveller in Nebraska when the defendant accepted him as a member does not affect the defendant with notice that commercial travellers generally in that vicinity were accustomed in their business to conduct themselves in the hazardous manner mentioned in the agreed facts, and does not warrant the inference that the defendant agreed to indemnify the plaintiff for any injury resulting from like conduct on his part. See besides the cases already cited, *Yancey* v. *Ætna Ins. Co.* 108 Ga. 349. The case differs from *Pacific Ins. Co.* v. *Snowden*, 58 Fed. Rep. 342, because in that case the plaintiff was permitted by the terms of his policy to attend to his cattle in the cars while in transit; and the injury happened while he rightly was acting upon that permission. It is agreed that the plaintiff gave the defendant no information of the facts now relied on, and that the defendant had no knowledge of them, unless such knowledge can be inferred from the facts agreed; and we find no ground for such an inference.

Accordingly the verdict for the defendant was ordered rightly, because upon the agreed facts the inference is unavoidable that the plaintiff's own negligence contributed to the injury for which he sues; and the certificate expressly provides that no indemnity shall be paid in such a case.

We have examined all the decisions to which we have been referred by the plaintiff's counsel in his able argument. Most of them are to the point that contributory negligence will not of itself as matter of law prevent a plaintiff from recovering under a policy which stipulates against a recovery for injury caused by "a voluntary exposure to unnecessary danger," or requires

merely that the insured shall " use all due diligence for personal safety and protection." *Badenfeld* v. *Massachusetts Accident Association*, 154 Mass. 77. *Freeman* v. *Travellers' Ins. Co.* 144 Mass. 572. *Manufacturers' Accident Indemnity Co.* v. *Dorgan*, 58 Fed. Rep. 945. *Travelers' Ins. Co.* v. *Randolph*, 78 Fed. Rep. 754. *Duncan* v. *Preferred Mutual Accident Association*, 13 N. Y. Supp. 620. *Burkhard* v. *Travellers' Ins. Co.* 102 Penn. St. 262. *Fidelity & Casualty Co.* v. *Chambers*, 93 Va. 138. *Providence Ins. Co.* v. *Martin*, 32 Md. 310. *United States Mutual Accident Association* v. *Hubbell*, 56 Ohio St. 516. *Johnson* v. *London Guarantee & Accident Co.* 115 Mich. 86. *Hunt* v. *United States Accident Association*, 146 Mich. 521. *Rustin* v. *Standard Ins. Co.* 58 Neb. 792. In *Keene* v. *New England Accident Association*, 161 Mass. 149, the court says, in speaking of such a policy, that " by taking out a policy of insurance against accidents one naturally understands that he is to be indemnified against accident resulting in whole or in part from his own inadvertence." In some of the cases most strongly relied on by the plaintiff, the court adverted to the fact that the policy did not exempt the insurer from liability for accidents caused or contributed to by the negligence of the insured. *Schneider* v. *Provident Ins. Co.* 24 Wis. 28. *Fidelity & Casualty Co.* v. *Sittig*, 181 Ill. 111. *Lovelace* v. *Travelers' Protective Association*, 126 Mo. 104. But in the case at bar the express stipulation of the policy is that the defendant shall not be liable for " any injury which the member, by the exercise of ordinary care, prudence and foresight, might have averted or prevented, or to which the member's own negligence shall have contributed."

The conclusion to which we have come on this question makes it unnecessary to consider whether the plaintiff's application for membership in the defendant association was admissible in evidence, or what would be the effect of the statements therein contained if admitted. In accordance with the stipulation of the report, the order must be

*Judgment on the verdict.*