Leon HORTMAN, Plaintiff,

AETNA CASUALTY & SURETY COMPANY,
Plaintiff and Cross-Respondent,†

v.

OTIS ERECTING COMPANY, INC., Defendant-Appellant,

GENE T. EBERLE ASSOCIATES, INC., Defendant-Respondent
and Cross-Appellant,†

BECKER CONSTRUCTION COMPANY, INC., Mark F. Pfaller
Associates, Inc., and John J. Flad & Associates, Inc.,
Defendants.

Court of Appeals

*No. 81–901. Submitted on briefs April 14, 1982.—
Decided June 8, 1982.*
(Also reported in 322 N.W.2d 482.)

† Petitions to review denied. ABRAHAMSON, J., took no part.

For the defendant-appellant Otis Erecting Company, Inc., the cause was submitted on the brief of *Cook & Franke, S.C.,* and *L. William Staudenmaier* and *Bruce A. Olson,* of counsel, of Milwaukee.

For the defendant-respondent and cross-appellant Gene T. Eberle Associates, Inc., the cause was submitted on the brief of *M. Susan Maloney* of *Hayes and Hayes* of Milwaukee.

For the plaintiff-cross-respondent Aetna Casualty & Surety Company the cause was submitted on the brief of *Lydia Y. Cooley* and *James T. Murray, Jr.,* of *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

Before Decker, C. J., Moser, P. J., and Randa, J.

RANDA, J.  This is an appeal from the trial court's holding that an indemnification clause in a subcontractor's contract required the subcontractor to indemnify the contractor even when the subcontractor was free from negligence.  We reverse.

Leon Hortman (Hortman), an employee of Becker Construction Company (Becker), was injured at a construction site when he was struck in the head by a piece of timber falling from a roof.  Becker's worker's compensation carrier, Aetna Casualty & Surety Company (Aetna) paid $11,208.15 in worker's compensation benefits to Hortman.

Becker, a general contractor, had subcontracted the structural metals work to Gene T. Eberle Associates, Inc. (Eberle).  Eberle, in turn, subcontracted the work to

Otis Erecting Company (Otis) and Wall Systems, Inc., a nonparty.

The contract between Becker and Eberle contained an indemnification clause which stated:

The Subcontractor agrees to assume direct responsibility and liability for any and all negligence and/or improper workmanship from or in the performance of his work under this agreement or resulting therefrom upon completion of his work under this agreement, and to hold harmless the Contractor, (his) (its) agents, servants and employees, from and against any and all losses, expenses, demands and claims for bodily injury, including death, property damage, or alleged bodily injury, including death, or alleged property damage, arising from any source, and the Subcontractor further agrees to defend any suit or action brought against the Contractor based on any such claims or alleged claims, regardless of the merit of the suit or action and to pay all costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom. The Subcontractor shall provide and maintain Public Liability, Property Damage Liability and Workman's Compensation Insurance and shall furnish certificates of insurance to cover work on this project as specified by the Contractor and/or the Owner . . .

The subcontract between Eberle and Otis contained a similar indemnification clause which stated:

The Subcontractor agrees to adequately protect his work and to assume direct responsibility and liability for any and all negligence and/or improper workmanship from or in the performance of his work under this agreement or resulting therefrom upon completion of his work under this agreement, and to hold harmless the Contractor (his) (its) agents, servants and employees from and against any and all losses, expenses, demands and claims for bodily injury, including death, property damage, or alleged bodily injury, including death, or alleged property damage, arising from any source, and the Subcontractor further agrees to defend any suit or action brought against the Contractor based on any such claims or alleged claims regardless of the merit of the suit or action

and to pay all costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom.

Hortman brought a personal injury action against Eberle, Otis and others not party to this appeal. Aetna joined with Hortman, seeking indemnification from Eberle for the worker's compensation payments made to Hortman. Eberle cross-claimed against Otis seeking indemnification under the indemnification clause in the subcontract between them.

Aetna, Eberle and Otis moved for summary judgment. Eberle and Otis sought dismissal of Hortman's and Aetna's causes of action. Eberle's position was that it was a broker and was at no time physically present on the work project. Otis's position was that its last day on the project was two weeks prior to the accident. Furthermore, none of Otis's materials were placed on wood so that Otis could not have been responsible for the piece of timber that hit Hortman.

The trial court awarded summary judgment to Otis and Eberle against Hortman. Motions for summary judgment by Eberle, Otis and Aetna, on the indemnity agreement, were all denied. The trial court concluded that the rules of construction of indemnity agreements in negligence cases, did not apply where, as here, the payments for which indemnification was sought were made under worker's compensation statute which requires payment regardless of fault.

Aetna's motion for summary judgment was denied pending an evidentiary hearing on the Becker-Eberle and Eberle-Otis indemnification agreements. Following the hearing, the trial court rendered an oral decision in which it concluded:

1. The Becker-Eberle and Eberle-Otis contracts were standard contracts in the industry.
2. The contracts were not unconscionable.
3. The contracts were not contracts of adhesion.

4. Eberle, under the indemnity contract, must pay Aetna the amount of worker's compensation paid to Hortman.
5. Eberle, under its indemnity agreement with Otis, recovers all payments made to Aetna.

Otis appeals from the judgment in favor of Eberle. Eberle appeals from the judgment in favor of Aetna.

The issue on appeal is: Whether Eberle, an entirely fault-free party, can be held liable to Aetna for worker's compensation payments because of the Becker-Eberle indemnification agreement and therefore, Otis, an entirely fault-free party, is in turn liable to Eberle because of the Eberle-Otis agreement.

Aetna asserted its right to recover worker's compensation payments made to Hortman on the ground that it was subrogated to Becker's rights under the indemnity agreement between Becker and Eberle. In its April 6, 1977 opinion, the trial court concluded, that absent the question of whether the indemnity agreement was an adhesion contract,[1] the trial court was inclined to hold that Aetna's motion for summary judgment on liability should be granted.

The trial court reached this conclusion by distinguishing this case from negligence cases in which strict rules of construction were used in interpreting indemnification agreements. The trial court reasoned that because in this case liability was based on the worker's compensation act, a determination of negligence was irrelevant and the rules of strict construction were not called for. Therefore, the trial court concluded: "Since the Becker-Eberle contract provides reimbursement for 'any and all losses, expenses, demands and claims for bodily injury, . . . arising from any source,' it necessarily follows that

[1] The trial court in its December 22, 1980 decision and order concluded that the indemnification agreement between Eberle and Otis was not an adhesion contract.

Aetna's motion for summary judgment on the liability aspect should normally be granted." We disagree.

The trial court concluded that the indemnification agreements were clear and unambiguous. Construction of an unambiguous contract is a question of law which we may review independently on appeal. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). When a contract is unambiguous, the following principles govern the construction of a written contract:

> The language of a contract must be understood to mean what it clearly expresses. A court may not depart from the plain meaning of a contract where it is free from ambiguity. In construing the terms of a contract, where the terms are plain and unambiguous, it is the duty of the court to construe it as it stands, even though the parties may have placed a different construction on it. It seems to us that when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right, by a process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made. *Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–03 (Ct. App. 1979), *aff'd,* 100 Wis. 2d 120, 301 N.W.2d 201 (1981) (citations omitted).

The indemnification agreement must be construed as a whole. *Pleasure Time v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463, 467 (1977). *See also Vinograd v. Travelers Protective Association,* 217 Wis. 316, 320–21, 258 N.W. 787, 789 (1935) (holding that the word "and" in a contract should be construed in a copulative and not a disjunctive sense).

The first portion of the Becker-Eberle indemnification clause provides: "The *subcontractor* agrees to assume direct responsibility and liability for any and all *negligence and/or improper workmanship* from or in the per-

formance of *his work* under this agreement or resulting therefrom upon completion of *his work* under this agreement, . . ." [Emphasis added.] This section clearly limits Eberle's exposure to Becker to those claims which arise out of the negligence or improper workmanship of Eberle.

The first portion of the indemnification agreement then modifies the following:

> . . . *and* to hold harmless the Contractor, (his) (its) agents, servants and employees, from and against any and all losses, expenses, demands and claims for bodily injury, including death, property damage, *arising from any source,* and the subcontractor further agrees to defend any suit or action brought against the Contractor based on any such claims or alleged claims, regardless of the merit of the suit or action and to pay all costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom. [Emphasis added.]

It is clear that reading the two portions together, Eberle will indemnify Becker for any losses occasioned by Eberle's negligence regardless of the source of the claim against Becker—be it an employee or a frequenter to the job site.

By reading the indemnification agreement as a whole, it is clear that the trial court erred in concluding that the negligence of the parties was irrelevant. Negligence is the key in determining Otis's and Eberle's liability under the indemnification agreements. It is clear that the subcontractors were to be held liable only for their negligence in the execution of their work. The trial court found both Otis and Eberle free from negligence. Aetna's claim was based solely on contractual indemnification. Since neither Eberle nor Otis were negligent and since neither agreed to provide indemnification for nonnegligent situations, Aetna has no claim for indemnification.

Even if we were to agree with the trial court's conclusion that the Becker-Eberle indemnification agreement may provide indemnity for Aetna's payment of worker's compensation benefits, such an indemnification clause must be strictly construed.

The rules of construction for indemnification agreements where the negligence of the parties is at issue have been stated as follows:

> We have held that indemnity agreements are to be liberally construed when they are concerned with the negligence of the indemnitor . . . and strictly construed when the indemnitee . . . seeks to be indemnified for its own negligence. There must be an express provision in the agreement to indemnify the indemnitee for liability occasioned by its own negligence. Such an obligation will not be found by implication. *Webster v. Klug & Smith,* 81 Wis. 2d 334, 340, 260 N.W.2d 686, 690 (1978). *See also Dykstra v. Arthur G. McKee & Co.,* 100 Wis. 2d 120, 124–25, 301 N.W.2d 201, 204 (1981).

We see no reason to distinguish this case where indemnification is being sought for the indemnitee's obligation under the worker's compensation statute from those cases in which the indemnitee is seeking to be indemnified for its own negligence. The apparent rationale behind the rule of strict construction is to prevent an indemnitee from easily escaping responsibility for its actions or its obligations by contractual means. Public policy requires such contracts to be construed narrowly rather than expansively. This rationale and policy should apply whenever indemnification is being sought based not on the indemnitor's own negligence or obligation, but on some obligation of the indemnitee.

Here Aetna is attempting to recoup from Eberle, a nonnegligent third party, payments made to Becker under the worker's compensation statute. Because the char-

acter of the indemnification is so unusual, there can be no presumption that the indemnitor intended to assume it in the absence of express and unequivocal language. Clear language is required to show that a contract of indemnification was intended to cover conditions or operations not under the control of the indemnitor. *See Dykstra v. McKee & Co., supra,* at 124–25, 301 N.W.2d at 204 (1981). Indemnification for Aetna's "loss" will not be found by implication. Accordingly, the rules of strict construction should have been applied in this case.

It should be noted that if we were to adhere to the trial court's broad construction of the indemnification agreement, the subcontractor's liability would be almost limitless. The subcontractors could be held liable for every claim arising out of the construction project, regardless of their culpability. Furthermore, Becker and Aetna could have brought suit against any one of Becker's twelve other subcontractors who had identical indemnity agreements in their subcontracts with Becker.

Accordingly, we reverse the judgments of the trial court against Eberle and Otis and direct that summary judgment be entered in favor of Otis against Eberle and in favor of Eberle against Aetna.

*By the Court.*—Judgments reversed and cause remanded.